IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF GEORGIA
AUGUSTA DIVISION

| | | |
|---|---|---|
| NATIONWIDE MUTUAL FIRE INSURANCE COMPANY, | * * * * | |
| Plaintiff, | * * | |
| v. | * * | CV 110-118 |
| CATO DEVELOPMENT, INC. and LUCILLE BURTON, | * * * | |
| Defendants. | * | |

O R D E R

Nationwide Mutual Insurance Company ("Nationwide") filed a complaint in this Court on September 8, 2010, within which it seeks rescission of an insurance policy issued to Defendant Cato Development, Inc. ("Cato Development"). Defendants Cato Development and Lucille Burton ("Burton") have both failed to file an answer,[1] and the matter is now before the Court on Nationwide's motion for default judgment.

**A. Nationwide's Complaint**

Nationwide contends Cato Development applied for a commercial general liability insurance policy on March 20, 2008. In its application, Cato Development stated its business was strictly limited to flooring installation in South Carolina and

---

[1] Although Burton failed to file an answer, she did respond to Nationwide's motion for default judgment. (See Doc. no. 13.) Her response, however, only addresses issues related to Cato Development's default.

Georgia. Cato Development further represented that it had not done any roofing work in the preceding three years and no claims or lawsuits had been filed against it in connection with its contracting work. After reviewing its application, Nationwide issued Cato Development an insurance policy for coverage between March 3, 2008, and March 3, 2009.

On April 6, 2009, Burton filed suit against Cato Development in the Court of Common Pleas of Edgefield County, South Carolina. Burton alleges Cato Development failed to repair her home in a workmanlike manner.[2] In her complaint, Burton asserts that she entered into several contracts with Cato Development within which the company agreed to make numerous repairs to Burton's fire-damaged home. Pursuant to these contracts, Cato Development agreed to remove all wreckage from the property and make various repairs to the roof, including replacement of the shingles. It also agreed to make electrical repairs, which included the installation of a temporary power pole, new electrical wiring, and new lighting. Burton contends many of the repairs performed were deficient—she states Cato Development's work resulted in unleveled windows and doors, leaks in the roof, and exposed electrical wires. In her suit, Burton seeks $26,000.00 in damages.

Nationwide is defending Cato Development in the South Carolina litigation pursuant to a Reservation of Rights, but has brought suit in this Court seeking to rescind its insurance

---

[2] Nationwide has named Burton as a defendant "so she will be bound by the coverage rulings of this Court." (Compl. ¶ 3.)

contract with Cato Development. Nationwide contends Cato Development made several misrepresentations in its application for insurance and, but for those misrepresentations, Nationwide would not have issued the insurance policy. More specifically, Nationwide alleges Cato Development represented that its business operations involved flooring installation, it had performed no roofing work in the preceding three years, and no claims or lawsuits had been filed against it as a result of its contracting work. Nationwide requests full rescission of the insurance contract and a declaration that Nationwide has no duty to defend or indemnify Cato Development in the lawsuit brought by Burton. In the alternative, Nationwide seeks a declaratory judgment providing that Burton's claims are capped at $5,000.00 under relevant policy provisions.

### B. Entry of Default

Nationwide served Burton personally with a copy of the summons and Complaint on September 20, 2010, and served Cato Development on October 5, 2010, through Kristina Cato, who is identified in the affidavit of service as the wife of Cato Development's registered agent, Kevin Cato. (See Doc. nos. 4 & 5.) Defendants failed to timely respond, and, on November 2, 2010, Nationwide filed a motion for entry of default. (Doc. no. 6.) The Clerk entered default on November 17, 2010 (doc. no. 8) and Nationwide filed a motion for default judgment (doc. no. 7) the following day.

Nationwide's legal counsel has certified that it mailed the motion for default and motion for default judgment to both Defendants at the time of filing. All mail was sent to Cato Development at 221 Edisto Street, Johnston, South Carolina, and to Lucille Burton at 1187 Calhoun Street, Johnston, South Carolina. Moreover, the Court has mailed all orders, including the entry of default and a show cause order, to Defendants' addresses, as they are listed in the Complaint; orders were mailed to Kevin Cato, Cato Development's registered agent, at 608 Woodyard Road, Trenton, South Carolina, and to Lucille Burton at 1187 Calhoun Street, Johnston, South Carolina.

### C. Sufficiency of Service

Out of an abundance of caution, the Court waited until May of 2011 to take up Nationwide's motion for default judgment. When the Court finally took the motion under consideration, questions arose regarding the sufficiency of service as to Cato Development. Consequently, the Court issued a show cause order on May 24, 2011, directing Nationwide to show cause why their motion against Cato Development should not be denied due to insufficient service of process. (Doc. no. 10.) Nationwide timely responded (doc. no. 11) and later supplemented their response with evidence obtained from the South Carolina Secretary of State (doc. no. 14).

According to the evidence presented, Cato Development was dissolved on August 17, 2009. (Doc. no. 11, Ex. 1.) Nevertheless, Nationwide first attempted to serve Kevin Cato, Cato Development's registered agent and president, at the address on file with the South Carolina Secretary of State—608 Woodyard Road, Trenton, South Carolina. On or around this time, Nationwide was informed that Mr. Cato would be out-of-state for an extended period of time. (Doc. no. 11, Ex. 2 at 2.) Upon review of the documents submitted by Cato Development during the application process, Nationwide discovered that Kristina Cato, Kevin Cato's wife, was listed on the insurance application as Cato Development's Vice-President.[3] (Id.) Upon realizing this, Nationwide promptly served Kristina Cato, personally, at her home address, 221 Edisto Street, Johnston, South Carolina.[4] (Doc. no. 5.)

Federal Rule of Civil Procedure 4(h) provides that a domestic corporation can be served "by delivering a copy of the summons and of the complaint to an officer" of the corporation. Based upon the evidence before the Court, Kristina Cato served as vice-president of Cato Development and was one of its two original incorporators. In addition, Kristina Cato is the wife of Kevin Cato—Cato Development's registered agent and former President—and resides together with Kevin Cato at the address

---

[3] Although not known to Plaintiff at the time, Kristina Cato is listed as an incorporator, along with Kevin Cato, in Cato Development's Articles of Incorporation. (See Doc. no. 14, Ex. 1 at 3.)

[4] Notably, this address is also Kevin Cato's stated residence and the primary billing and mailing address for Cato Development. (See Doc. no. 1, Ex. 5.)

5

where she was served. Moreover, notably, this address was also listed as the primary, mailing and billing address for Cato Development in the insurance application.

In light of the information available, Nationwide had little choice but to serve Kristina Cato. See <u>Valmont Indus., Inc. v. Susie's Structures, Inc.</u>, No. 5:08-cv-81, 2009 WL 111465, at *3 (M.D. Fla. Jan. 14, 2009) ("While an active Florida corporation ordinarily may not be served through its former employees, Plaintiff had no other option than to serve [one of two] former officers . . . [who were] the only two living persons known to have any connection [with the corporation].") More importantly, the Court has little doubt that the corporation has received notice of the filing of this lawsuit; service was effectuated at the corporation's primary address for billing and mailing purposes, which also serves as the residence of the only two identifiable officers of the corporation.

### D. Default Judgment

"Defendant's default does not in itself warrant the court in entering a default judgment. There must be a sufficient basis in the pleadings for a judgment entered. . . . The defendant is not held to admit facts that are not well-pleaded or to admit conclusions of law." <u>Nishimatsu Constr. Co. v.</u>

Houston Nat'l Bank, 515 F.2d 1200, 1206 (5th Cir. 1975).[5]  A defendant, by his default, is only deemed to have admitted the "plaintiff's well-pleaded allegations of fact." Id.

> Thus, before entering a default *judgment* for damages, the district court must ensure that the well-pleaded allegations in the complaint, which are taken as true due to the default, actually state a substantive cause of action and that there is a substantive, sufficient basis in the pleadings for the particular relief sought.

Tyco Fire & Sec., LLC v. Alcocer, 218 Fed. Appx. 860, 863 (11th Cir. 2007) (emphasis in original). In the end, "three distinct matters [are] essential in considering any default judgment: (1) jurisdiction; (2) liability; and (3) damages."[6] Pitts ex rel. Pitts v. Senecar Sports, Inc., 321 F. Supp. 2d 1353, 1356 (S.D. Ga. 2004).

### 1. Jurisdiction

The parties in this case are diverse and the amount in controversy exceeds $75,000, thus the Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332. Moreover, this Court has jurisdiction over Cato Development because the events and/or omissions that form the basis of the rescission action arose from a business transaction that took place in Columbia County, Georgia, in connection with an application for commercial insurance coverage in Georgia and South Carolina.

---

[5] See Bonner v. City of Prichard, Ala., 661 F.2d 1206, 1207 (11th Cir. 1981) (holding Fifth Circuit decisions made on or before September 30, 1981, are binding precedent in Eleventh Circuit).

[6] Because Plaintiff seeks only rescission and declaratory relief in this action, the Court need not address the issue of damages.

See <u>Denim N. Am. Holdings, LLC v. Swift Textiles, LLC</u>, No. 4:10-cv-45, 2011 WL 318127, at *3-*6 (M.D. Ga. Jan. 28, 2011).

With regard to Defendant Burton, however, Nationwide provides no legitimate basis for personal jurisdiction, either in its complaint or its motion for default judgment. Instead, Nationwide provides conclusory assertions as grounds for the Court's jurisdiction over Burton—a *South Carolina* resident who brought suit against Cato Development in *South Carolina* as a result of repairs performed in *South Carolina*. (<u>See</u> Compl. ¶ 8 ("Defendants are subject to the personal jurisdiction of this Court.").) These bare assertions, without any factual or legal basis, are insufficient to support a finding of personal jurisdiction over Burton, and, as such, the motion for default judgment against Burton is **DENIED WITHOUT PREJUDICE**. To the extent Nationwide can establish that this Court does have personal jurisdiction over Burton, Nationwide may submit such evidence and/or legal arguments in a second motion for default judgment.

   *2. Liability*

In this diversity action, the Court must apply the choice-of-law rules of the forum state of Georgia. <u>Boardman Petroleum, Inc. v. Federated Mut. Ins. Co.</u>, 135 F.3d 750, 752 (11th Cir. 1998).

> Georgia's choice of law rules follow the doctrine of *lex loci contractus*: the law of the place where the contract is made. Under Georgia's choice of law rules, the place where the contract is made is the place where the "last act essential to the completion

8

of the contract was done." For insurance contracts, the act of delivery is the last act essential for completion of the insurance contract, and thus the place of delivery is where the insurance contract is made.

Shorewood Packaging Corp. v. Commercial Union Ins. Co., 865 F. Supp. 1577, 1578 (N.D. Ga. 1994) (citation omitted).

In support of the application of Georgia law, Nationwide contends, "[b]ecause the policy was delivered in Georgia (Complaint, ¶ 7), Georgia law controls the contractual obligations of the parties." (Doc. no. 7 at 7.) Paragraph seven of Plaintiff's Complaint reads as follows: "[T]he insurance policy at issue was delivered to Cato by Nationwide's agent located in Columbia County, Georgia, to cover contracting services in Georgia and South Carolina." Contrary to Plaintiff's characterization, this statement, even if accepted as true, does not conclusively establish that the policy was delivered in Georgia, as opposed to South Carolina; it merely provides that the agent who delivered the policy was located in Georgia.

With that said, however, Georgia "limit[s] the application of non-forum substantive law to statutes and caselaw interpreting those statutes," and the Eleventh Circuit has repeatedly approved of this rule. Shorewood, 865 F. Supp. at 1581. With regard to the issues raised in the Complaint, the Court has been unable to locate a single South Carolina statute addressing the issue of rescission as a result of material misrepresentations contained in an application for general

9

commercial liability insurance.[7]  Accordingly, the Court must apply Georgia law in determining whether rescission is appropriate in this instance.

Under Georgia law, "when an applicant for insurance makes material misrepresentations on his or her application for insurance, the insurer is entitled, as a matter of law, to rescind the policy."  Home Indem. Co. Manchester, N.H. v. Toombs, 910 F. Supp. 1569, 1573 (N.D. Ga. 1995).  The requirements for rescission are specifically articulated in the Georgia Code as follows:

> Misrepresentations, omissions, concealment of facts, and incorrect statements shall not prevent recovery under [an insurance] policy or contract unless: (1) Fraudulent; (2) Material either to the acceptance of the risk or to the hazard assumed by the insurer; or (3) The insurer in good faith would either not have issued the policy or contract or would not have issued a policy or contract in as large an amount or at the premium rate as applied for or would not have provided coverage with respect to the hazard resulting in the loss if the true facts had been known to the insurer

---

[7] Although the Court has found no South Carolina statute directly on-point, the statutes it has found tend to indicate that South Carolina would allow rescission under the circumstances presented here.  See, e.g., S.C. Code § 38-71-40 ("The falsity of any statement in the application for any [accident or health insurance] policy does not bar the right to recovery thereunder unless the false statement was made with actual intent to deceive or unless it materially affected either the acceptance of the risk or the hazard assumed by the insurer.").  This outcome is further supported by South Carolina caselaw.  See, e.g., McCracken v. Gov't Emps. Ins. Co., No. 85-1146, 1985 U.S. App. LEXIS 31618, at *1 (4th Cir. Aug. 6, 1985) (finding insurance policy void ab initio under South Carolina law because of fraudulent misrepresentations made in the procurement of the policy); Home Fire & Marine Ins. Co. v. Tisdale, 303 F.2d 348, 350 (4th Cir. 1962) ("Rescission of a policy . . . for misstatement of a representation can be obtained by an insurer in South Carolina only upon a showing that the accused statements were: (1) untrue; (2) known to the applicant to be false; (3) material to the risk; (4) relied on by the insurer; and (5) made with intent to defraud and deceive the company."); Small v. Coastal States Life Ins. Co., 241 S.C. 344, 349 (1962) (finding policy not voidable because insurer made no showing that the insured "knowingly falsified . . . answers with intent to deceive [the insurance company] into issuing the policies in question.").

>  as required either by the application for the policy
>  or contract or otherwise.

O.C.G.A. § 33-24-7(b); see also Taylor v. Ga. Int'l Life Ins. Co., 207 Ga. App. 341, 342 (1993) ("To preclude the applicant from recovering under the policy, 'the insurer need only show that the representation was false and that it was material in that it changed the nature, extent, or character of the risk.'" (citation omitted)).

Plaintiff states in its Complaint that "Cato's application [for insurance] falsely stated that its business operation was limited to flooring installations and that no claims or lawsuits were filed for contracting operations." (Compl. ¶ 24.) Moreover, Plaintiff adds, "[i]f Cato's application had provided truthful information Nationwide in good faith would not have issued the Policy or would have not issued the Policy in as large an amount or at the premium rate applied." (Id. ¶ 25.)

With the allegations in the Complaint deemed admitted, rescission is appropriate under Georgia law. Accordingly, Plaintiff has no duty to defend or indemnify Cato Development for the claims asserted in the Burton lawsuit based upon the insurance policy addressed herein.

## CONCLUSION

Upon the foregoing, Plaintiff Nationwide Mutual Fire Insurance Company's motion for default judgment (doc. no. 7) is

**GRANTED** as to Cato Development, Inc. and **DENIED** as to Lucille Burton. The Nationwide insurance policy issued to Cato Development and numbered ACP GLGO 2303332155 is hereby declared **VOID** and **RESCINDED** pursuant to O.C.G.A. § 33-24-7. Consequently, Nationwide has no duty, pursuant to this policy, to defend or indemnify Cato Development for the claims asserted in the Burton lawsuit.

**ORDER ENTERED** at Augusta, Georgia, this 8th day of September, 2011.

HONORABLE J. RANDAL HALL
UNITED STATES DISTRICT JUDGE
SOUTHERN DISTRICT OF GEORGIA